No. 83-228

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

EDWARD FREDERICK,

Defendant and Appellant.

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Robert J. Boyd, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael J. McKeon, Anaconda, Montana

For Respondent:

Mike Greely, Attorney General, Helena, Montana
John N. Radonich, County Attorney, Anaconda,
Montana

Submitted on Briefs: November 17, 1983

Decided: February 2, 1984

Filed: FEB 2 - 1984

*Ethel M. Harrison*

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The defendant Edward Frederick was convicted of theft in the Deer Lodge County District Court on January 11, 1983. Frederick was sentenced to eight years imprisonment; the sentence was suspended under certain conditions including restitution. From this conviction defendant appeals.

Frederick entered into a lease agreement with Town Pump, Inc., on July 19, 1980, to operate a gas station in Anaconda. Frederick leased the building and pumps for a monthly rental fee and paid for gasoline sold customers by depositing proceeds of his sales in a Town Pump bank account. The monthly rental arrangement was detailed in a written lease agreement. The arrangement for payment for gasoline was expressly left to the mutual assent of the parties. In their course of dealing, Frederick made daily deposits of the gasoline sales proceeds belonging to Town Pump in its bank account.

To insure that its lessees fully paid for all gasoline sold, Town Pump followed an accounting practice that required the station operators to make daily totals of sales, amounts of gasoline sold, telephone weekly summaries, and make confirmatory measurements of gasoline remaining in underground storage tanks. On December 11, 1981, a gasoline audit of the Anaconda Town Pump station revealed that Frederick had failed to deposit $6,377 of proceeds due Town Pump.

Defense counsel's primary contention at trial and in this appeal is that the defendant had a debtor-creditor relationship with Town Pump and criminal liability is misplaced. A secondary issue presented to this Court is whether the District Court erred in allowing parol evidence of the

2

procedures Frederick followed in paying Town Pump for gasoline. Since the disposition of the second issue facilitates our analysis of the relationship between Frederick and Town Pump, the question concerning the parol evidence will be addressed first.

I

The testimony at issue here concerned the defendant's practice of paying Town Pump for the gasoline he sold his customers. The District Court allowed the State's witnesses, employees of Town Pump at the time of the events in question, to testify that Town Pump required the defendant to make daily payment for all gasoline sold. The objection to this testimony was based on the parol evidence rule; the written agreement signed by the two parties contained no specifications on how Frederick was to make payment for the gasoline.

Before a party to a contract can successfully claim applicability of the parol evidence rule, there must be a showing that the instrument is a complete and final document intended by the parties to contain all the terms of the contract. Carriger v. Ballenger (Mont. 1981), 628 P.2d 1106, 1109, 38 St.Rep. 864. The lease agreement is notably silent on procedures for payment of gasoline sold by the lessee. Moreover, in Paragraph 20 of the agreement, the document states: "The lessee may elect to pay for the gasoline upon such terms and conditions as the parties may mutually agree." Here is an express statement that plainly allows the parties to supplement the contract with terms outside its four corners. The testimony of the Town Pump employee Redfern that Frederick was required to make payments daily does not alter or contradict the written agreement, but merely provides

evidence of a supplemental agreement occurring subsequent to the lease and expressly anticipated by the document. The parol evidence rule and section 28-2-905, MCA, have no application in such a situation and there was no error by the District Court in ruling the testimony admissible.

II

The second allegation of error is that the verdict is contrary to the law, the evidence and instructions of the court. The main thrust of defendant's argument is that a debtor-creditor relationship existed between himself and Town Pump. After being notified by Town Pump of the shortage in deposited proceeds, it is contended that defendant's only obligation was a contractual duty to repay the debt and the breach of this civil obligation cannot form the basis for criminal liability.

The theft statute under which Frederick was charged states:

> "Theft. (1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
>
> "(a) has the purpose of depriving the owner of the property; . . ." Section 45-6-301(1)(a), MCA.

The particular property upon which the information was based was the money Frederick collected from the sale of the gasoline, not the gasoline itself.

From all the testimony and evidence introduced at trial, it appears clear that defendant was under a duty to deposit the funds due Town Pump in the Town Pump account. In addition to uncontroverted testimony by Town Pump employees that Frederick was required to make the daily deposits, daily

deposit tickets were introduced by the State that demonstrate the defendant did in fact make deposits for the several months preceding termination of the lease. From this course of dealing alone, it is evident that Town Pump entrusted Frederick with the gasoline it supplied under the acknowledged understanding that the company's share of sale proceeds would be deposited in its bank account.

Defendant requested and received a jury instruction that provided that if the jury believed Frederick took title to the gasoline when it was delivered to him, then his only obligation to pay for the gasoline was contractual and breach thereof would not constitute theft. A letter from Town Pump to Frederick was introduced by the defendant that indicated title to "the petroleum products you purchase" rested with the station operator. Resolution of the factual question of when title passed to the operator was properly left to the jury. The resulting conviction indicates that the jury did not conclude title passed upon delivery. In light of the practice established at trial that Frederick made daily payments to the Town Pump account based on the gasoline sold the same day, there is credible evidence to support the conclusion of the jury. Where there is substantial evidence to support resolution of factual matters, this Court must affirm the decision of the jury. State v. Hardy (Mont. 1980), 604 P.2d 792, 37 St.Rep. 1.

Defendant characterizes his legal relationship with Town Pump as an independent contractor who leased the gasoline station. Such characterization is technically correct but does not preclude a finding that Frederick acted in a fiduciary capacity as well. This Court has previously recognized that although collecting agents are technically not

5

true agents, like the defendant in the present case, there are instances where such individuals will be considered agents in order to remedy an evil. State v. Holdren (1963), 143 Mont. 103, 112, 387 P.2d 446, 450. In Holdren an independent contractor was found to be an agent for the purposes of an embezzlement statute which has been subsequently replaced with the theft statute, section 45-6-301, MCA, under which Frederick was convicted.

The Restatement (Second) of Agency supports this Court's view that an independent contractor may be found to be an agent. In the Restatement's commentary on independent contractors as agents, it is noted:

> ". . . In fact, most of the persons known as agents, that is, brokers, factors, attorneys, collection agencies, and selling agencies are independent contractors as the term is used in the Restatement of this Subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services. However, they fall within the category of agents. They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience. Some of them also fall within the category of trustees, as in the case of a selling agent who has been given title to the subject matter. Colloquial use of the terms excludes independent contractor from the category of agent as a similar use excludes trustee, but in both cases there is an agency if in the transaction which they undertake they act for the benefit of another and subject to his control. Thus, salesmen as a group are divided into servants and non-servants, the latter falling into the class of independent contractors for the purpose of distinguishing them from others for whose physical conduct in the scope of employment the employer is responsible." (Emphasis added.) Restatement (Second) of Agency, §14N Comment a (1958).

The Restatement language quoted above was also cited with approval by the Idaho Supreme Court in affirming the embezzlement conviction of a gasoline station manager who failed to turn over to the oil company gasoline proceeds belonging to it. State v. Compton (1969), 92 Idaho 739, 450 P.2d 79. The circumstances of the case before this Court, like those presented in Compton, warrant the conclusion that a fiduciary relationship existed between the defendant and the oil company. Town Pump placed a special confidence in its station operator that the proceeds due the company would be placed in its account. This was one of the basic and principal obligations Frederick owed Town Pump. Frederick, through his course of dealing in the months preceding the shortage, demonstrated his understanding of the entrustment of the gasoline and his responsibility for making payment to the company account. The defendant's obvious deviation from this recognized fiduciary duty when he falsified accounting reports to the company clearly indicated an intent to purposely deprive Town Pump of its proceeds.

Defendant relies on the Colorado decision of Kelley v. People (1965), 157 Colo. 417, 402 P.2d 934, in which a debtor-creditor relationship was found to exist between a gasoline station operator who failed to make gasoline payments and his oil company. However, the Colorado opinion is distinguishable from our decision today in that it failed to find that the operator was in any way an agent of the oil company or that the Colorado company required receipts from the sale of gasoline to be set aside in trust.

The defendant in the present case deliberately attempted to conceal his retention of the proceeds due Town Pump. This action is inconsistent with an ordinary debtor-creditor

relationship. State v. Smith (1959), 135 Mont. 18, 334 P.2d 1099. Furthermore, there is nothing in the record below that supports defendant's contention that the parties intended to create, either expressly or impliedly through a continuing course of conduct, a debtor-creditor relationship. Once the shortage in deposited proceeds was discovered, there was a demand for an accounting and Town Pump terminated the lease agreement. The parties did not continue in their regular course of business. The jury was left only with defense counsel's bare assertion that the failure to deposit the proceeds due Town Pump created a debtor-creditor relationship. Without more, this Court has previously refused to find a debtor-creditor relationship. State v. Holdren, 143 Mont. at 117, 387 P.2d at 453.

In light of the foregoing discussion, there can be no doubt that the jury verdict was properly supported by the evidence and in accordance with the law and instructions of the court. A person taking money entrusted to him cannot avoid criminal liability by calling it a loan.

The judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____
Justices